**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| PLAYBOY ENTERPRISES INTERNATIONAL, INC., a Delaware corporation, | ) ) ) | |
| Plaintiff, | ) ) | No. 10-cv-4811 |
| v. | ) ) | |
| SMARTITAN (SINGAPORE) PTE LTD., a company organized under Singapore law, ELTEX INTERNATIONAL, LTD., a company organized under Hong Kong law, and GEORGE CHAN, an individual, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge:

Playboy Enterprises International, Inc. ("Playboy") filed this complaint against Smartitan (Singapore) Pte. Ltd. ("Smartitan"), Eltex International, Ltd. ("Eltex"), and George Chan, alleging breach of contract against Smartitan and Eltex ("Count I"), unjust enrichment against Eltex ("Count II"), and tortious interference with contract against Chan ("Count III"). Smartitan and Eltex responded by filing a joint motion to dismiss Counts I and II due to lack of personal jurisdiction, improper venue, insufficient service of process, and *forum non conveniens*. (Smartitan Mem. at 1.) Chan filed a companion motion to dismiss Count III due to lack of personal jurisdiction, improper venue, and *forum non conveniens*. (Chan Mem. at 1.) We agree that we lack personal jurisdiction over Chan and dismiss Count III accordingly. We deny Smartitan and Eltex's motion with respect to Playboy's remaining counts against them.

## I. BACKGROUND

On March 1, 2006, Playboy, a Delaware corporation with its principal place of business in Chicago, Illinois, entered into a Product License Agreement ("PLA") with Smartitan, a Singapore company organized under the laws of Singapore. (Compl. ¶¶ 1–3.) Playboy, through its publication of an internationally circulated magazine and worldwide distribution of multimedia entertainment, apparel, and accessories, has become an internationally recognized brand. (*Id.* ¶ 8.) Under the PLA, Playboy granted Smartitan the right to use several of the well-known Playboy trademarks for a narrowly defined group of products, such as apparel and women's bags, to be sold only in Japan. (*Id.* ¶ 10.)

Sometime in 2008, Playboy learned that Smartitan was selling unapproved products bearing the Playboy logo into unauthorized channels of distribution in violation of the PLA. (*Id.* ¶¶ 15–16.) Smartitan was also frequently late with its sales reports and fell behind with the payment of royalties. (*Id.* ¶ 17.) In August 2009, Playboy exercised its right under the PLA to audit Smartitan, resulting in findings that Smartitan owed Playboy more than $300,000. (*Id.* ¶ 19.) At the instruction of Smartitan's managing director and decision-maker, George Chan, the audit took place not in Singapore, but at Eltex's offices in Hong Kong. (*Id.*)

Playboy was aware of Eltex, for although the PLA was signed only by Smartitan, Eltex, a company organized under the laws of Hong Kong, had made all payments to Playboy that were due under the PLA since the onset of the contract. (*Id.* ¶ 11.) Eltex also used the Playboy trademarks in Japan, allegedly in accordance with the PLA. (*Id.*) Additionally, Smartitan and Eltex shared at least one common shareholder, Man Hon Mui. (*Id.*) Indeed, Playboy assumed "that Smartitan and Eltex were one and the same." (*Id.* ¶ 19.) Playboy thus believed "Eltex so

controlled the affairs of Smartitan that Smartitan was a mere instrumentality of Eltex." (*Id.* ¶ 13.)

In 2008, unbeknownst to Playboy, Smartitan apparently dissolved and Eltex continued the contract in place of Smartitan.[1] (*Id.* ¶ 11.) There were no changes in business that would have alerted Playboy that Smartitan had been dissolved, as all contact between Playboy and Smartitan regarding the PLA remained with Chan, and all payments pursuant to the PLA continued to come, as they always had, from Eltex. (*Id.* ¶ 12.)

Chan was Smartitan's Managing Director, and was Playboy's primary contact at Smartitan. (*Id.*) Chan was not the Managing Director of Smartitan at the time the PLA was signed, but after he assumed this role, Chan signed all agreements with Playboy on behalf of Smartitan. (*Id.*) Despite the apparent dissolution of Smartitan in 2008, all of Playboy's communications regarding the PLA remained with Chan. (*Id.*) Chan was the point of contact when Playboy traveled to Hong Kong to perform the Smartitan audit held at the Eltex office. (*Id.*) Once Chan was appointed Managing Director, Playboy never communicated with anyone except Chan regarding the PLA, nor did Chan ever refer Playboy to any other officers or managers of Smartitan. (*Id.*) Playboy understood that Chan was Smartitan's decision-maker. (*Id.*)

---

[1] Whether or not Smartitan in fact dissolved is ambiguous based on the current state of the record. Playboy alleges that Smartitan dissolved sometime in 2008, but Smartitan submitted an affidavit from its secretary, dated August 25, 2010, stating that Smartitan "*is* a Singapore company with its main office located in Singapore." (Lui Aff. ¶ 3 (emphasis added).) Given that Smartitan is the only Defendant that signed the PLA, its status will be a crucial issue to be sorted out in discovery in this case. But as discussed below, Playboy's allegations are sufficient at this stage to establish that Smartitan's obligations with respect to the PLA attach to Eltex as Smartitan's successor.

On July 30, 2010, Playboy filed this complaint alleging breach of the PLA and unjust enrichment against Defendants Smartitan and Eltex (Counts I and II), and tortious interference with contract against Chan (Count III).  (*Id.* ¶¶ 1–42.)

## II.  ANALYSIS

### 1.    Personal Jurisdiction

Rule 12(b)(2) calls for dismissal where we lack personal jurisdiction over a party.  Fed. R. Civ. P. 12(b)(2).  Although a plaintiff need not anticipate a personal jurisdiction challenge in its complaint, once the defendant moves to dismiss the complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction.  *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003).  When we determine a Rule 12(b)(2) motion based on the submission of written materials without holding an evidentiary hearing, the plaintiff must make a *prima facie* case of personal jurisdiction. *GCIU-Emp'r Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023 (7th Cir. 2009); *Purdue*, 338 F.3d at 782.  As such, the plaintiff bears the burden of establishing that personal jurisdiction exists.  *GCIU*, 565 F.3d at 1023; *Purdue*, 338 F.3d at 782.  In determining whether the plaintiff has met its burden, we resolve all factual disputes in the plaintiff's favor.  *Purdue*, 338 F.3d at 782 ("[T]he plaintiff is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record.").

### A.    Smartitan

Smartitan moves to dismiss the complaint pursuant to Rule 12(b)(2) for lack of personal jurisdiction.  The Product Licensing Agreement ("PLA") between Playboy and Smartitan contained a forum selection clause, which provided that "any and all disputes arising out of or

relating in any way to this [PLA] shall be litigated only in courts sitting in Cook County, Illinois." (Resp. (Chan) at 1.) Smartitan does not dispute the validity of this forum selection clause. Rather, Smartitan avoids addressing the PLA almost entirely, instead focusing its argument on its lack of minimum contacts with the forum state under *International Shoe v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158 (1945). Smartitan admits, however, that "it is true that the PLA contains a clause in which the parties agreed to submit to personal jurisdiction in Cook County, Illinois." (Smartitan Mem. at 2.) Therefore, we must determine whether a forum selection clause establishes personal jurisdiction for those parties to the agreement who, absent the agreement, might otherwise lack sufficient minimum contacts to establish personal jurisdiction.

We begin with the threshold question of whether state or federal law governs the validity of forum selection clauses in diversity suits where jurisdiction would otherwise be unobtainable. We are guided by the Seventh Circuit's approach to this very same issue: "Prudence in this situation counsels us to reserve decision and instead consider how the [issue] would be decided under either view and hope that the result will be the same." *IFC Credit Corp. v. Aliano Bros. Gen. Contractors, Inc.*, 437 F.3d 606, 609 (7th Cir. 2006).

Under federal law, a forum selection clause is treated "like any other contractual provision," and is deemed valid "unless it is subject to any of the sorts of infirmity, such as fraud and mistake, that justify a court's refusing to enforce a contract." *Nw. Nat'l Ins. Co. v. Donovan*, 916 F.2d 372, 375 (7th Cir. 1990) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12-13, 92 S.Ct. 1907, 1914-1915 (1972)); *see also Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 590-95, 111 S.Ct. 1522, 1526-28 (1991) (holding as valid a forum selection clause that

appeared on the back of a cruise ship ticket). Here, the contractual provision is not confusing, there are no allegations asserting fraud or any bad faith on behalf of Playboy, and the defendants do not challenge the validity of the agreement. The forum selection clause is therefore valid under federal law.

Under state law, while "[a]t the black-letter level, Illinois law concerning the validity of forum selection clauses is materially the same as federal law," in application, "Illinois law is more lenient toward the defendant than the federal law when there is a significant inequality of size or commercial sophistication between the parties." *IFC*, 437 F.3d at 611. However, if sophisticated parties freely enter into a clearly stated agreement knowing the potential inconvenience that would arise should there be a dispute, a party cannot then argue inconvenience as a means of voiding the forum selection clause. *Mellon First United Leasing v. Hansen*, 705 N.E.2d 121, 125, 301 Ill. App. 3d 1041, 1045 (2d Dist. 1998); *see also Compass Envtl., Inc. v. Polu Kai Servs.*, 882 N.E.2d 1149, 1156, 379 Ill. App. 3d 549, 555 (1st Dist. 2008) ("The party opposing the enforcement of the clause must show that 'trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court.'") (quoting *Calcana v. D & S Mfg. Co.*, 510 N.E.2d 21, 23, 157 Ill. App. 3d 85, 87 (1st Dist. 1987)). Here, while it does tout the inconvenience of overseas litigation, Smartitan is, from every indication, a sophisticated party that knowingly entered into the PLA, of which the forum selection clause was clearly part. Ultimately, Smartitan offers no arguments save for sheer inconvenience as to why the contractual provision should not be enforced, and thus the forum selection clause is valid under Illinois state law.

We conclude that the forum selection clause is valid under both federal and state law, and

as a party to the PLA, we have personal jurisdiction over Smartitan.

**B.      Eltex**

We next address whether personal jurisdiction extends to Eltex, who is not a signatory

party to the PLA.  Playboy argues that personal jurisdiction over Eltex is justified as Eltex is the

successor corporation of Smartitan, and alternatively that Eltex is the alter ego of Smartitan.

Playboy argues that Eltex is Smartitan's successor corporation and is therefore liable for

Smartitan's debts under the PLA.  According to the Seventh Circuit, a successor corporation is

one that "has chosen to stand in the shoes of its predecessor and has chosen to accept the

business expectations of those who have dealt previously with that predecessor."  *Purdue*, 338

F.3d at 784; *see also Hoppa v. Schermerhorn & Co.*, 630 N.E.2d 1042, 1046, 259 Ill. App. 3d

61, 66 (1st Dist. 1994) (finding that one company was the successor of another where the first

company dissolved, and the two companies shared a building, a bank account, a staff, business

accounts, and most importantly, shareholders).  Courts will impose successor liability: "(1)

where there is an express or implied agreement of assumption; (2) where the transaction amounts

to a consolidation or merger of the seller corporation; (3) where the purchaser is merely a

continuation of the seller; or (4) where the transaction is for the fraudulent purpose of escaping

liability for the seller's obligation."  *Apollo Galileo USA P'ship v. Am. Leisure Holdings, Inc.*,

No. 07 C 4403, 2009 WL 377381, at *8 (N.D. Ill. Feb. 11, 2009).  Further, "courts have

recognized that the jurisdictional contacts of a predecessor corporation may be imputed to its

successor corporation" such that the successor corporation "can be expected to be haled into the

same courts as its predecessor."  *Purdue*, 338 F.3d at 784; *see also Apollo*, 2009 WL 377381, at

*7 ("[A] number of other courts, including the Seventh Circuit, have applied the rationale of

successor liability to exercise personal jurisdiction over a nonresident defendant.").

Eltex rebuts Playboy's contention that it is the successor of Smartitan by claiming that Playboy's allegation is a mere legal conclusion that is unsupported by sufficient facts. (Reply at 2–4.) Playboy's Complaint forwards several facts detailing Eltex's role as Smartitan's successor. First, all payments to Playboy pursuant to the PLA have been, since the very start of the contract, made by Eltex. (Compl. ¶¶ 11, 33.) Further, at the request of Chan, Playboy's audit of Smartitan in August 2009 was performed not at Smartitan's office in Singapore, but in Eltex's office in Hong Kong. (*Id.* ¶ 12.) Playboy's main point of contact pursuant to the PLA, Chan, remained the point of contact even after the alleged dissolution of Smartitan in 2008, when Eltex was allegedly controlling operations pursuant to the PLA. (*Id.*) Smartitan and Eltex also shared at least on common shareholder, Man Hon Mui. (*Id.* ¶ 11.) Finally, despite the alleged dissolution of Smartitan in 2008, Eltex carried on business as usual pursuant to the terms of the PLA without notifying Playboy of this changing of the guard. (*Id.* ¶¶ 11–12, 32–33.) Indeed, Eltex continued to distribute products, make payments, and benefit from sales based on the terms of PLA, as thought it was "stand[ing] in the shoes" of Smartitan. (*Id.* ¶¶ 13–14, 32–33.) *Purdue*, 338 F.3d at 784.

These undisputed facts establish that Eltex is a continuation of Smartitan, where there is an implied assumption that Eltex is Smartitan's successor, and that the two have in fact merged into a single entity. Therefore, Playboy has sufficiently made its *prima facie* case for personal jurisdiction under the successor theory, and we need not address the alter ego theory of liability.[2]

---

[2]    In order to pierce the corporate veil in an alter ego analysis, Illinois courts require first that there is "'such unity of interest and ownership that the separate personalities [of the corporations] no longer exist,' and second, when circumstances are 'such that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *Great*

In light of this, and in accordance with Illinois law, Eltex is subject to the jurisdictional contacts established under the forum selection clause of the PLA, making personal jurisdiction over Eltex appropriate.

### C.   George Chan

We next address whether personal jurisdiction extends to Chan, who did not sign the PLA. Playboy's only argument on the issue is that Chan is subject to the forum selection clause because he was closely related to the PLA and is therefore subject to personal jurisdiction in the Northern District of Illinois. (Resp. (Chan) at 7–12.)

Playboy cites several cases, some of which are from this district, that apply forum selection clauses to non-signatories, including directors. *See Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209–10 (7th Cir. 1993) (holding that plaintiff suing a former employer was required to litigate all matters relating to the membership agreement in accordance with the forum selection clause, and that claims brought on behalf of the plaintiff's two closely related, non-signatory corporations against the former employer were also bound by the clause); *FASTI USA v. FASTI Farrag & Stipsits GmbH*, No. 02 C 8191, 2003 WL 1581472, at *2 (N.D. Ill. Mar. 26, 2003) (holding that a defendant who was signatory to a contract stating that all litigation would take place in Austria could not file a counterclaim against the plaintiff's closely related, non-signatory alter ego in a jurisdiction incongruent with the forum selection clause). These cases

---

*Lakes Overseas, Inc. v. Wah Kwong Shipping Group, Ltd.*, 990 F.2d 990, 996 (7th Cir. 1993) (quoting *Sea-Land Servs., Inc. v. Pepper Source*, 941 F.2d 519, 520 (7th Cir. 1991)); *Hystro Prods., Inc. v. MNP Corp.*, 18 F.3d 1384, 1388–89 (7th Cir. 1994). While the parties forward no arguments as to the applicability of American corporate protections over foreign corporations, assuming, *arguendo*, that Smartitan were awarded the corporate protections of American companies, Playboy nonetheless alleges a wealth of facts in support of its theory that Eltex is the alter ego of Smartitan. However, as Playboy has sufficiently established jurisdiction under the successor corporation theory, we need not resolve the issue at this time.

are inapposite.  They involve either non-signatories bringing suit for violations arising from a contract in a forum other than the one specified in the forum selection clause, or suits brought by those unsuccessfully attempting to sue for violations arising from a contract in a forum other than the one specified in the forum selection clause.

While this line of cases serves a purpose, that purpose is not to allow litigants to sidestep corporate veil piercing requirements to reach directors and shareholders simply because they are closely related to the dispute.  Here, Playboy is attempting to utilize a forum selection clause to obtain personal jurisdiction over a non-signatory defendant—namely, a director of a corporation—and bind him by the forum selection clause.  To adopt Playboy's argument would impermissibly allow a plaintiff to establish personal jurisdiction over directors and shareholders of a corporation simply by alleging that they were closely related to the dispute arising from the agreement.  Playboy has failed to establish that we have personal jurisdiction over Chan. Defendants' motion for dismissal of Chan on the basis of lack of personal jurisdiction is therefore granted.

**2.      Venue**

Under Rule 12(b)(3), a party may move to dismiss based on improper venue.  Fed. R. Civ. P. 12(b)(3).  Plaintiff has the burden of establishing that venue is proper.  *Hanyuan Dong v. Garcia*, 553 F. Supp. 2d 962, 964 (N.D. Ill. 2008).  In ruling on a motion to dismiss for improper venue, we follow the same standard as for a Rule 12(b)(2) motion.  We may examine facts outside the complaint, while taking all the allegations in the complaint as true, and drawing all reasonable inferences in favor of plaintiff.  *Id.*

-10-

Defendants claim that venue in the Northern District of Illinois is improper as we do not have personal jurisdiction over any defendants. "The question of personal jurisdiction, which goes to the court's power to exercise control over the parties, is typically decided in advance of venue, which is primarily a matter of choosing a convenient forum." *Leroy v. Great W. United Corp.*, 433 U.S. 173, 180, 99 S.Ct. 2710, 2715 (1979). Venue is proper in "a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(b)(3).

We have already held that the "courts sitting in Cook County, Illinois" have personal jurisdiction over Smartitan and Eltex by way of the forum selection clause in the PLA. "The law is clear: where venue is specified with mandatory or obligatory language, the [forum selection] clause will be enforced; where only jurisdiction is specified, the clause will generally not be enforced unless there is some further language indicating the parties' intent to make venue exclusive." *Paper Exp., Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 757 (7th Cir. 1992) (holding that venue was specifically indicated by the inclusion of the phrase "the action shall be filed in the court which has jurisdiction for *the principal place of business of the supplier*") (emphasis added); *Donovan*, 916 F.2d at 375 (holding that by agreeing to a forum selection clause, a party waives objections to venue in the chosen forum based on cost or inconvenience).

The language of the forum selection clause clearly and unmistakably states that "any and all disputes arising out of or relating in any way to this [PLA] *shall be litigated only in courts sitting in Cook County, Illinois*." (Resp. (Smartitan) at 3.) Therefore, venue in the Northern District of Illinois is proper with respect to Smartitan and Eltex.

-11-

**3.** *Forum Non Conveniens*

Defendants also argue that the case should be dismissed under the doctrine of *forum non conveniens* so that it can be litigated in Hong Kong or Singapore. The application of *forum non conveniens* consists of a two-part inquiry: (1) whether an adequate alternative forum is available to hear the case; and (2) whether private and public interest factors clearly point towards trial in the alternate forum. *AAR Int'l, Inc. v. Nimelias Enters., S.A.*, 250 F.3d 510, 524 (7th Cir. 2001). Additionally, the traditional analysis puts a "strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." *Id.* (quoting *Macedo v. Boeing Co.*, 693 F.2d 683, 688 (7th Cir. 1982)). However, the Seventh Circuit has decided "that where parties to an international suit have agreed to a mandatory forum selection clause, the usual *forum non conveniens* analysis no longer applies." *Id.* at 525–26 (holding that "[w]hatever inconvenience [defendant] would suffer by being forced to litigate in a court in Illinois was foreseeable at the time that it agreed to waive objections based on such factors""").

The forum selection clause, which applies to both Smartitan as a signatory to the PLA and Eltex as a successor or alter ego corporation, was both clear and mandatory. Therefore, the motion to dismiss on ground of *forum non conveniens* is denied.

**4.** **Service of Process**

A plaintiff must satisfy the procedural requirement of service of summons and a copy of the complaint before a federal court may exercise personal jurisdiction over a defendant. *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104, 108 S. Ct. 404, 409 (1987); Fed. R.

-12-

Civ. P. 4. A defendant may seek to dismiss the complaint on the basis that service has not been properly made. Fed. R. Civ. P. 12(b)(5).

Smartitan alleges that Playboy failed to properly serve Smartitan, and requests that the case be dismissed pursuant to Rule 12(b)(5). The Federal Rules of Civil Procedure govern service methods for the federal courts. Fed. R. Civ. P. 4. Rule 4(h)(2) details the process for serving a foreign corporation not within a judicial district of the United States, whereby the corporation must be served "in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(I)."[3] Fed. R. Civ. P. 4(h)(2). Rule 4(f)(2) enumerates various acceptable methods of service where there is no internationally agreed means, with the underlying notion that it be "a method that is reasonably calculated to give notice," while not offending foreign or international law. Fed. R. Civ. P. 4(f)(2). One such method is "using any form of mail that the clerk addressed and sends to the individual and that requires a signed receipt" as long as such method is not "prohibited by the foreign country's law."[4] Fed. R. Civ. P. 4(f)(2)(C)(ii). Another method involves asking for assistance from the foreign authority through letters rogatory. Fed. R. Civ. P. 4(f)(2)(B). The Rules also permit a catch-all, whereby service is allowed "by other means not prohibited by international agreement, *as the court orders*." Fed. R. Civ. P. 4(f)(3) (emphasis added).

A recounting of the facts pertinent to Playboy's attempted service is appropriate. First, Playboy attempted to serve Smartitan in Singapore at its last known address, but this address was not valid. (Resp. (Smartitan) at 15–16.) This came as no surprise to Playboy, who during the

---

[3]     Singapore is not a member of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, and thus Rule 4(f)(1) is not applicable here.
[4]     The summons and complaint were sent directly by Playboy, and not by the Clerk of the Court. Therefore, this provision is not applicable.

audit of Smartitan, had been directed away from Singapore to Eltex's Hong Kong office at the request of the decision-maker Chan, who was also in Hong Kong. (*Id.*) Further, shareholder Man Hon Mui was allegedly available only in Hong Kong. (*Id.*) In searching for an alternative address in Singapore, Playboy confirmed through publicly available documents that Smartitan had dissolved, and determined that neither Smartitan, nor any of its officers, were present in Singapore. (*Id.*) Playboy ultimately served Smartitan by sending the summons and complaint to the home of the director and shareholder of Smartitan, Man Hon Mui, in Hong Kong. (*Id.*) As Playboy puts it, they made a good-faith effort to serve Smartitan in Singapore, but there was no one left to serve.[5] (*Id.*)

Smartitan argues that Playboy failed to regard Rule 4(f)(2)(A)'s requirement that service be given "as prescribed by the foreign country's law." Fed. R. Civ. P. 4(f)(2)(A). Smartitan claims that the Singapore Rules of Court allow for service outside of Singapore only with leave of a Singaporean Court. (Reply at 4 (citing Sing. R. of Ct. O.11, r. 1).) As Playboy did not obtain leave of court in Singapore, Smartitan asserts that service was not proper under Rule 4(f)(2)(A).[6]

---

[5]    Countering Playboy's notion that service within Singapore was a viable possibility, Smartitan attached an affidavit of Charles Lui, the secretary of Smartitan, asserting that Smartitan has no offices in Hong Kong and that it is a Singapore company with its main office in Singapore. In response to this, however, Playboy rightly points out that the affidavit was signed and notarized in Hong Kong, and offers no current address or means of contact on how Smartitan might be served in Singapore.

[6]    Playboy argues that its method of service was proper under Rule 4(f)(3), and asks the court to approve service under this Rule retroactively, *nunc pro tunc*. Such an authorization would require (1) that the manner of service was appropriate under Rule 4(f)(3), and (2) that retroactive authorization is permissible. Pertaining to the former, one factor in considering the authorization of service under Rule 4(f)(3) is that the proposed method not be offensive to the laws of the foreign country—a factor insufficiently addressed by the parties. To the latter, not only do the Rules omit any explicit mention of retroactive authorization under Rule 4(f)(3), but this circuit does not endorse retroactive authorization where the proper methods of service are

However, the Seventh Circuit has also held that "[w]here one corporation so controls another corporation that, as a practical matter, the two entities function as one, service on one corporation is effective as to both." *Bally Exp. Corp. v. Balicar, Ltd.*, 804 F.2d 398, 405 (7th Cir. 1986). While we did not need to decide whether Eltex is the alter ego of Smartitan, we did establish that, for purposes of this opinion, Eltex is the successor of Smartitan. Further, the practical necessity that requires one to serve a dissolved corporation via its successor is tantamount to the necessity of providing service to the alter ego of a sham corporation. Therefore, under the circumstances presented here, serving a successor corporation is a sufficient means of providing service of process to a dissolved corporation. The facts here further show that both Eltex and Smartitan were served in Hong Kong on behalf of the common shareholder, Man Hon Mui. (Smartitan Mem. at 10; Resp. (Smartitan) at 16.) Moreover, Defendants have no objection regarding the service of process on Eltex. Thus, as Eltex is the corporate successor of Smartitan, and both companies were served together, we find the service upon Smartitan via shareholder Man Hon Mui in Hong Kong to be appropriate.

For these reasons, Smartitan's motion to dismiss on the grounds of insufficient service of process is denied.

---

explicit in the Rules. *MacLean-Fogg Co. v. Ningbo Fastlink Equip. Co., Ltd.*, No. 08 CV 2593, 2008 WL 5100414, at \*2 (N.D. Ill. Dec. 01, 2008) (holding that "an abundance of caution" was necessary in preserving the language of Rule 4(f)(3), even if the means of service on Chinese defendants was effective).

## IV.  CONCLUSION

Smartitan and Eltex's joint motion to dismiss Counts I and II is denied.  Chan's motion to dismiss Count III for lack of personal jurisdiction is granted.  It is so ordered.

_____
Honorable Marvin E. Aspen
U.S. District Court Judge

Date: April 7, 2011